**UNITED STATES of America,**
**Plaintiff,**

v.

**Paul B. GLADDEN, Defendant.**

**Crim. No. 31174.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 29, 1969.

George P. Hand, Jr., Asst. U. S. Atty., New Orleans, La., for plaintiff.

Louis B. Merhige, New Orleans, La., for defendant.

CASSIBRY, District Judge:

Defendant moves to dismiss Count One of the bill of information, which charges him with selling heroin from an unstamped package in violation of 26 U. S.C. § 4704(a).[1] This section makes it unlawful to sell narcotic drugs except in a package containing the internal revenue stamp indicating payment of the tax levied by 26 U.S.C. § 4701.[2] Defendant contends that compliance with the tax statute would violate his Fifth Amendment privilege against self-incrimination.

Defendant relies upon the recent decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), where the Supreme Court held that failure to comply with the excise and occupational taxes and registration requirements imposed upon those engaged in the business of accepting wagers could not be criminally punished when compliance would have violated defendant's Fifth Amendment privilege against self-incrimination. The statutory system for taxing wagers imposes an excise tax of 10 percent on the gross amount of all wagers accepted, 26 U.S.C. § 4401, an occupational tax of $50 annually on those persons accepting wagers, 26 U.S.C. § 4411, and registration each year with the local director of the internal revenue by all those persons liable for the occupational tax. 26 U.S.C. § 4412. After examining the vast barrage of federal and state law prohibiting gambling activities, the Supreme Court found that if one paid the taxes or registered, the hazards of self-incrimination were "real and appreciable" and not merely "imaginary and unsubstantial." Marchetti v. United States, 88 S.Ct. 697, 702. The wagering statutes required disclosure of activities in "an area per-

1. "(a) General requirement.—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from naroctic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

2. "(a) Rate.—There shall be imposed an internal revenue tax upon narcotic drugs, produced in or imported into the United States, and sold, or removed for consumption or sale, at the rate of 1 cent per ounce, and any fraction of an ounce in a package shall be taxed as an ounce. The tax imposed by this subsection shall be in addition to any import duty imposed on narcotic drugs.

"(b) By whom paid.—The tax imposed by subsection (a) shall be paid by the importer, manufacturer, producer, or compounder."

meated with criminal statutes." *Id.* They were directed at a group "inherently suspect of criminal activities." *Id.* And any information gained from compliance with them was readily available to state and federal law enforcement officers. 26 U.S.C. § 6107. Thus the defendants either had to pay the tax and incriminate themselves under the regulatory legislation or fail to pay the tax and risk prosecution under the tax statutes. In these circumstances, it was held that Marchetti and Grosso properly asserted the privilege as a defense to charges of failure to register and pay the gambling taxes.

Defendant contends that the statute making it unlawful to sell narcotic drugs in a package without a tax stamp affixed is unconstitutional under the doctrine announced in *Marchetti* and *Grosso*. He maintains that had he complied with the statute and paid the tax and obtained the appropriate tax stamp, he would have incurred the real and substantial risk of incriminating himself under the phalanx of federal and state laws regulating the possession, sale, or purchase of narcotic drugs,[3] and is therefore entitled to assert the Fifth Amendment privilege against self-incrimination as a defense to the unlawful sale alleged. The Court finds no merit in defendant's claim because, as will be shown below, he was ineligible to pay the tax and obtain the stamp, and was thereby not compelled to legalize his activities under the internal revenue laws by an allegedly self-incriminatory act.[4]

Operation of the pertinent portions of the comprehensive tax scheme designed to limit dealings in narcotic drugs to legitimate purposes is briefly described in the following excerpt from the Government's Brief in Opposition to Certiorari at 7–8, Morgan v. United States, 391 F. 2d 237 (9th Cir.), cert. denied, 393 U.S. 853, 89 S.Ct. 91, 21 L.Ed.2d 122 (1968).

"* * * Under the provisions of the statutes, and the implementing regulations, any person who wishes to deal (i.e., import, manufacture, produce, compound, sell, deal in, dispense, or give away) in narcotic drugs must register and pay an occupational tax at a rate prescribed by law (26 U.S.C. 4721–4722; 26 C.F.R. 151.21, 151.41). Persons may not register under the provisions of the Act, or pay the tax, unless they can satisfy the Bureau of Narcotics, after an investigation, that they are qualified under state law to conduct the business or activity for which registration is sought (26 C.F. R. 151.23–151.24). Once so registered, *importers, manufacturers, producers, and compounders* are subjected to a commodity tax at the rate of 1 cent per ounce on narcotic drugs which have been imported or produced, and which have been sold, or have been removed for consumption or sale (26 U.S.C. 4701; 26 C.F.R. 151.-121, 151.125–151.126). The commodity tax is paid in the following manner: When the narcotic drug is imported, or produced and set aside for consumption or sale, the importer or producer must purchase from the district director of Internal Revenue adhesive tax stamps representing payments of the appropriate tax; these stamps are, in turn, affixed by the importer or producer to each package or container (according to the respective weight) prior to sale (26 U.S.C. 4771; 26 C.F.R. 151.128–151.130). To ensure that these drugs will not reach the illicit market, no person is

---

3. Under federal law unauthorized possession, sale, purchase, or importation of narcotic drugs is a criminal offense. 26 U.S.C. §§ 4704(a), 4705(a), 4724; 21 U.S.C. § 173. Unauthorized possession and sale are also criminal acts under the Uniform Narcotic Drug Act adopted by Louisiana in 1934. LSA–R.S. 40:961–984.

4. The Court passes no judgment on whether compliance with the tax stamp provisions of the internal revenue laws would be self-incriminatory under *Marchetti* and *Grosso*. As defendant could not have so complied, the question need not be reached.

allowed to deal in narcotic drugs which are not in a stamped package or container (26 U.S.C. 4704(a), * * *.)" (Emphasis added.)

For defendant to have acquired the necessary tax stamp under the regulatory system delineated above, he would have had to meet two requirements: register and pay the occupational tax; and be an importer, manufacturer, producer, or compounder of the narcotic drug for which the tax stamp is sought. The registration requirement and defendant's ability to comply with it raise difficult constitutional questions under *Marchetti* and *Grosso*; but they need not be discussed here since defendant, who has given no indication that he is an importer or producer, but is apparently only a seller, of narcotic drugs, would not be able, even if registered, to pay the commodity tax and obtain the appropriate taxpaid stamp required for a lawful sale under § 4704(a). Defendant's failure to obtain the tax stamp, then, arises not from any alleged risk of self-incrimination, but rather from his inability to meet the statutory requirements for obtaining the stamp. This is no ground for asserting a violation of his Fifth Amendment privilege against self-incrimination. Defendant has simply violated a statute designed to limit the distribution of narcotic drugs to legitimate channels.[5] In no way does it require defendant to act so as to incriminate himself in order to comply with its terms.

It is ordered that the motion of defendant to dismiss Count One of the bill of information be, and the same is hereby, denied.

5. Section 4704(a), though ostensibly a tax measure, is in essence an absolute prohibition on the sale of narcotic drugs by this defendant; while he may sell only drugs with a tax stamp affixed, he is precluded from obtaining the necessary tax stamp to legalize his sale. The Supreme Court upheld § 4704(a) as a valid exercise of the power of Congress to lay taxes in Alston v. United States, 274 U.S. 289, 47 S.Ct. 634, 71 L.Ed. 1052 (1927). Should there be any

doubt as to the viability of this determination, the present-day scope of the commerce clause, U.S.Const. art. I, § 8, certainly provides Congress with ample constitutional power to so regulate the traffic in narcotic drugs. *Cf.* United States v. Darby, 312 U.S. 100, 115, 61 S.Ct. 451, 457, 458, 85 L.Ed. 609 (1941); United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297 (1948).